No. A–278 (77–452).  MOBIL ALASKA PIPELINE Co. v. UNITED STATES ET AL.;

No. A–280 (77–457).  EXXON PIPELINE Co. v. UNITED STATES ET AL.;

No. A–319 (77–551).  BP PIPELINES, INC. v. UNITED STATES ET AL.; and

No. A–376 (77–602).  ARCO PIPE LINE Co. v. UNITED STATES ET AL.  C. A. 5th Cir.

On October 20, 1977 [*ante,* p. 913], this Court stayed the order of the Interstate Commerce Commission served June 28,

1977, in its Investigation and Suspension Docket No. 9164, Trans Alaska Pipeline System (Rate Filings), pending final disposition of the petitions for writ of certiorari by this Court. To further effectuate that order, it is hereby ordered:

1. During the period the stay is in effect, commencing at 3 p. m., e. d. t., October 20, 1977, the following pipeline companies may collect their respective rates set forth in the tariffs that were suspended by the Interstate Commerce Commission in its order of June 28, 1977:

Amerada Hess Pipeline Corporation
ARCO Pipe Line Company
BP Pipelines, Inc.
Mobil Alaska Pipeline Company
Sohio Pipe Line Company
Exxon Pipeline Company
Union Alaska Pipeline Company

2. The Federal Energy Regulatory Commission may proceed with its investigation of the rates set forth in said tariffs (FERC Docket No. OR78–1) and in connection with that investigation may enter any appropriate orders not inconsistent with either this order or this Court's order of October 20, 1977.

3. During the period the stay is in effect, the pipeline companies shall keep account of all sums collected under the terms of said tariffs by virtue of the stay entered by this Court.

4. In the event certiorari is denied or it is otherwise ultimately determined that said pipeline companies were not lawfully entitled to collect a portion of the rates so collected, the pipeline companies shall refund such portion of said rates, with interest computed in accordance with Section 15 (8)(e) of the Interstate Commerce Act, as amended, 90 Stat. 38, 49 U. S. C. A. § 15 (8)(e) (Supp. 1977), to the persons entitled thereto without further order of this Court.

MR. JUSTICE STEWART and MR. JUSTICE POWELL took no part in the consideration or decision of this order.

Mr. Justice Brennan, with whom Mr. Justice Marshall joins, dissenting.

I initially joined in granting a stay in these cases. Upon further consideration, however, I am convinced that our stay was improvidently and precipitately issued and that it should now be dissolved.

Applicants will be able to collect approximately $1.5 million per day by virtue of our stay that would not be collected were the suspension order of the Interstate Commerce Commission—which is the subject of petitions for certiorari in this case [1]—to remain in effect. Because of the enormous sums of money that will be collected under our stay, over $100 million by January 28, 1978, when the suspension order of the ICC ends by its terms, the Court should be very clear before continuing this stay that it is really needed to protect applicants and, more importantly, that the provisions of the stay adequately protect the interests of anyone who may be affected by this litigation. On the pleadings so far before us, I am not convinced that the Court is in a position to act with any such conviction.

First, with respect to the need for the stay, it is important to recognize that each applicant comes before this Court in a dual capacity: Each is both a part owner of the Trans Alaska Pipeline System *and* a shipper of oil over the pipeline. Therefore some amounts which an applicant would be prevented from collecting under the suspension order would immediately be recouped as extra profit to that applicant in its capacity as a shipper. This is not to suggest that the gains would offset the losses with any precision, but only that the net losses may be sufficiently small that extraordinary equitable relief would not be appropriate.

My greater concern, however, is that the form of our stay may not adequately protect the ultimate consumers of oil

---

[1] For a discussion of the background of this litigation, see *Mobil Alaska Pipeline Co.* v. *United States*, 557 F. 2d 775 (CA5 1977).

shipped over the pipeline or the interests of shippers or holders of royalty interests in the oil at Prudhoe Bay. Although the applicants aver that the "landed price" of oil in the United States will not be affected by our stay and therefore that consumers of Alaskan oil will not face higher prices because of our order, I am not prepared to accept these unexplained statements on the record presently before us. Nor do I think the interest which applicants are today ordered to pay on any amounts ultimately ordered refunded is sufficient to reimburse shippers and royalty holders for the costs they may incur as a consequence of our stay. The only information we have as to what those costs may be is the statement of the Arctic Slope Regional Corp.[2] that it will have to borrow at an estimated interest of 10% amounts equal to the royalties it would have had but for our stay. Nonetheless, the Court today sets the interest to be paid on amounts refunded at the rate prescribed by 49 U. S. C. § 15 (8)(e) (1976 ed.), which applies only to railroad tariffs and is today somewhere below 7%.[3] Indeed, in adopting this rate, the Court today rejects what is to me the much more reasonable suggestion of the Solicitor General that the interest be set at 9%, which is the rate prescribed by the Federal Power Commission for tariff refunds from natural gas pipelines.[4]

For the reasons stated above, I would vacate the stay ordered by this Court on October 20, 1977, and order proceedings on the petitions for certiorari to be expedited. Barring

[2] Arctic Slope is the representative of the Inupiat Eskimos who have a claim to be paid 2% of the wellhead value of Alaskan crude oil up to a total of $500 million as consideration for their surrender of aboriginal land claims in the Prudhoe Bay area.

[3] Section 15 (8)(e) sets the rate of interest at "a rate which is equal to the average yield . . . of marketable securities of the United States which have a duration of 90 days."

[4] See 18 CFR § 154.67 (c)(2) (1977).

this, I would have entered the form of stay order suggested by the Solicitor General.

MR. JUSTICE BLACKMUN, dissenting.

I, too, conclude that the Court's stay was improvident. I agree with the conclusions reached by MR. JUSTICE BRENNAN and would vacate the stay issued by this Court on October 20, would accelerate consideration of the petitions for certiorari, and would follow the suggestions of the Solicitor General as to the rate of interest.